UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

John J.,                                )
                                        )
            Plaintiff,                  )
                                        )          Case No. 20 CV 50118
v.                                      )
                                        )          Magistrate Judge Lisa A. Jensen
Kilolo Kijakazi,[1]                     )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

Plaintiff John J. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying him disability insurance benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

**I. Background**

Plaintiff filed for disability insurance benefits in June 2016 and supplemental security income in July 2016, alleging disability beginning on May 3, 2016. He alleged disability due to deep vein thrombosis ("DVT"), pulmonary embolism, cardiac issues, diabetes and neuropathy. He appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on August 4, 2017. The ALJ also heard testimony from a vocational expert ("VE"). The ALJ denied his disability claim. Plaintiff appealed the ALJ's decision, and the parties jointly agreed to a remand of the case. On October 28, 2019, Plaintiff appeared and testified before the same ALJ for a remand

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).

1

hearing. The ALJ also heard testimony from an independent medical expert Dr. Steven Goldstein as well as hearing from a new VE. On December 2, 2019, the ALJ issued an opinion denying Plaintiff's claims.

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the hands bilaterally; degenerative joint disease of the ankles bilaterally and left big toe with bunions; peripheral arterial disease/chronic venous insufficiency; history of pulmonary embolism and DVT; degenerative disc disease, cervical and lumbar spine; mild carpal tunnel syndrome/neuropathy; mild neuropathy of the right ankle; left rotator cuff tendinopathy with impingement; and obesity. The ALJ went on to find that Plaintiff could engage in light work with additional postural modifications and found that he requires a sit-stand option which allows for sitting or standing at the workstation but changing positions no more than twice an hour so that he is not off task more than 10% of the workday. Plaintiff appealed the ALJ's order to this Court in April 2020.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence).

2

A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5 (N.D. Ill. Oct. 29, 2014).

### III. Discussion

Plaintiff argues that the ALJ erred by: (1) failing to appropriately evaluate Plaintiff's subjective symptoms; (2) inappropriately relying on VE testimony from the first hearing rather than testimony offered by the VE in a subsequent hearing; and (3) improperly evaluating the opinion evidence. The Court will address each in turn.

**A. Subjective Symptoms**

Plaintiff argues that the ALJ erred in her evaluation of his subjective symptoms. Pl.'s Br. at 12, Dkt. 20. Throughout his brief, but especially with respect to the subjective symptom evaluation argument, Plaintiff takes a "kitchen sink approach to briefing [that] cause[s] distraction and confusion, [and] also consumes space that should be devoted to developing the arguments with some promise." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). Based on his 1-2 sentence arguments, the Court will attempt to distill Plaintiff's points and address them accordingly.

When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability*

*Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). However, because an ALJ is in the best position to determine a witness's truthfulness, an ALJ's assessment of a plaintiff's subjective symptom allegations is given special deference and will be overturned only if it is patently wrong. *See Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

The ALJ lists a number of reasons in support of her subjective symptoms evaluation including that: Plaintiff took no pain medications and was treated conservatively; records generally do not reflect ambulation difficulties; his diabetes was well-controlled; he routinely denied calf pain and shortness of breath, while at other times his shortness of breath was noted to be mild; he consistently declined physical therapy recommendations; he frequently reported being able to do daily activities without limitations; treating physician Dr. Plescia declined to sign off on Plaintiff receiving a handicap placard; Plaintiff generally did not have edema in his lower extremities; he was often advised to start/continue a regular exercise program; he was often in no acute distress on examination and was talkative or making jokes at appointments; on multiple occasions he was noncompliant with his medications; his treatment has not generally changed; he has not had surgery, nor has it been recommended, other than for his toe; his doctors continually advised him to move more, rather than less; and he provided numerous excuses for declining treatment

recommendations. R. 1034, 1040-41. Plaintiff does not contest all of the bases used by the ALJ to support the symptoms evaluation; in fact, the ALJ includes mostly sound reasons supported by the record to discount Plaintiff's allegations. With respect to the ALJ's bases that Plaintiff does contest, the Court will briefly address each, as set forth below.

### 1. Daily activities

The ALJ considered Plaintiff's daily activities, which is a factor that "may be used to discredit a claimant's testimony." *Cullinan*, 878 F.3d at 603. Plaintiff contends that the ALJ "confusingly" includes in her decision that Plaintiff was "active and doing things without any limitation" prior to the alleged onset date. Pl.'s Br. at 14, Dkt. 20. It would be improper for the ALJ to rely solely upon evidence that took place years prior to the alleged onset date; however, that is not what happened here. The ALJ cites to multiple treatment notes following the alleged onset date stating that Plaintiff was engaging in daily activities without limitations. R. 1029, 1032, 1035, 1040.

Plaintiff argues that the ALJ disregarded his statements in a 2016 function report wherein he recounted various difficulties with activities of daily living, including that he had pain from walking, standing, and sitting; he had no endurance for long walks; he prepared meals that took a few minutes; and that his sons did his chores. Pl.'s Br. at 14, Dkt. 20; *see* R. 274-76. Plaintiff argues that an ALJ cannot disregard a claimant's limitations in performing household activities. However, the ALJ did not ignore Plaintiff's allegations.

The ALJ discussed the August 2016 function report at some length in her decision. While she did not specifically mention Plaintiff's statement that meals took a few minutes and his sons did his chores, she did reference his statements that he did very little throughout the day aside from walking a little (two short walks a day), resting, eating, and taking medications. R. 1026. Her

discussion of the function report specifically included Plaintiff's statements that he could walk a couple of blocks at most before feeling pain. The ALJ also recounted Plaintiff's testimony that he had problems pouring water in the coffee pot and lifting 8 pounds; that he had trouble gripping and grabbing things; and that he could only wash 1 or 2 dishes before he needed to sit down. R. 1026-28. The ALJ was not required to discuss every detail related to Plaintiff's alleged limitations associated with those activities. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("an ALJ need not discuss every detail related to [a claimant's daily activities] . . . [a]nd the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence.") (internal citation omitted); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("[T]he ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").

More importantly, the ALJ did take into consideration Plaintiff's pain and restrictions in daily activities when she assessed Plaintiff's residual functional capacity ("RFC"). The ALJ expressly stated that she considered Plaintiff's pain complaints in her decision to limit Plaintiff to work at the light exertional level with additional functional limitations. She also addressed Plaintiff's pain with walking, standing, and sitting with a sit-stand option, allowing him to change positions up to twice an hour while continuing to work at the workstation. R. 1040-41. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("[T]he ALJ did not totally discount [the plaintiff's] testimony regarding how her pain affected her ability to perform certain activities, as evinced by the ALJ's decision to limit [the plaintiff's] range of work to sedentary when assessing her residual functional capacity."); *see also Taylor v. Berryhill*, No. 17 C 9098, 2018 WL 5249234, at *7 (N.D. Ill. Oct. 22, 2018); *Spaulding v. Berryhill*, No. 16-CV-6298, 2017 WL 3922878, at *11 (N.D. Ill.

Sept. 7, 2017). Therefore, the ALJ's assessment of Plaintiff's activities of daily living was not "patently wrong" and does not warrant remand.

### 2. Conservative treatment

#### a. Lack of Surgery

Plaintiff makes several arguments relating to the ALJ's reliance on evidence of conservative treatment. As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility. *See Simila v. Astrue,* 573 F.3d 503, 519 (7th Cir. 2009). However, an ALJ cannot make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance. *See Keiper v. Berryhill*, 383 F. Supp. 3d 819, 823 (N.D. Ind. 2019) (collecting cases). Here, Plaintiff asserted at the 2019 hearing that surgery had been an option for his back/neck issues but that his insurance had refused to approve diagnostic imaging. R. 1067. The ALJ stated in a footnote that she did not see any issues with insurance refusals documented in the record and that there were "a dozen diagnostic imaging evaluations" noted in the record, including most recently in September 2019. R. 1027. Plaintiff asserts that, contrary to the ALJ's commentary, there are references in the record regarding Plaintiff's inability to afford care.[2] Pl.'s Br. at 13, Dkt. 20. However, the ALJ does not comment one way or the other on whether Plaintiff can afford care. She simply notes that the records do not reflect insurance denials and, more significantly, she notes a "dozen" radiographic tests in the charts, thus casting doubt on Plaintiff's statements that he did not have surgery because insurance denied diagnostic testing.

Plaintiff also argues that the evidence supports that surgery and further imaging was not performed due to Plaintiff's underlying medical conditions. Pl.'s Br. at 13, Dkt. 20. However, the

---

[2] Plaintiff cites to two record entries. One refers to an inability to afford a specific medication. The other does not refer to an inability to afford care.

notes that Plaintiff cites do not support his contention. One of Plaintiff's citations is to a treatment note from Dr. Yeager, in which Plaintiff himself expresses hesitancy about surgery, so Dr. Yeager advised Plaintiff to contact him regarding surgical intervention when he was ready. R. 967. Plaintiff also cites to a treatment note from Dr. Plescia, which states that Plaintiff was requesting imaging and further workup and Dr. Plescia explained that he felt further testing would not be helpful, but in fact could be dangerous (due to the significant number of radiographic tests that had already been performed on Plaintiff). R. 1711. Moreover, the Court was unable to find evidence in the record that any of Plaintiff's physicians had concerns about surgery due to his medical conditions. Based on the above information, the ALJ was not patently wrong to consider the lack of surgery in support of her contention that Plaintiff's treatment was conservative.

### b. Lack of Pain Medication

Plaintiff's second argument concerns the ALJ's reliance on his lack of pain medication. Pl.'s Br. at 14-15, Dkt. 20. The fact that a claimant does not take pain medication is a relevant factor to consider when determining a claimant's statements about pain. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005)). Plaintiff argues that he could not be on pain medication because he was on blood thinners and that he had tried Gabapentin, but experienced negative side effects. The ALJ recognized Plaintiff's assertions that he did not take pain medication because he was on blood thinners or because Gabapentin caused side effects but pointed to numerous places in the record demonstrating that Plaintiff often refused to take the medication based on his own preference. R. 1035-37, 1040. Moreover, the ALJ noted that Plaintiff even refused to take topical pain relievers, despite there being no alleged contraindication to the same. R. 1438. Plaintiff does not address the ALJ's

reasoning in this regard. The ALJ's reliance on Plaintiff's lack of pain medication was not patently wrong.

### c. Hospitalization and Injections

Plaintiff next contests the ALJ's conclusion that he was treated conservatively during 2016-2017. Pl.'s Br. at 15-16, Dkt. 20. As an initial point, the ALJ referenced Plaintiff's conservative treatment throughout the relevant period, not just the first year following the alleged onset date. R. 1040. She relies on the evidence that Plaintiff's treatment has consisted primarily of injections that provided relief and that he has self-treated with diet and lifestyle changes that have contributed to the improvement of some of his conditions. *Id*. Plaintiff challenges the ALJ's conclusion, pointing out that he was hospitalized for cardiac issues, and he received injections to his lower extremities for which relief was short-lived. Pl.'s Br. at 15-16, Dkt. 20.

With respect to Plaintiff's assertion that his hospitalization for cardiac issues contradicts the ALJ's conclusion that his treatment was conservative, the ALJ had noted in her decision that his one additional DVT episode resulting in hospitalization was due to voluntary non-compliance with his medication. R. 1040. The implication is that, if Plaintiff had been compliant with his prescribed course of treatment, he would have avoided this hospitalization. Plaintiff responds that his noncompliance was less of a choice than an inconvenience of frequent INR monitoring and uncertainty about which foods would interfere with his medication. Pl.'s Br. at 18, Dkt. 20. However, according to a treatment note relating to this hospitalization, Plaintiff mentioned he had not been taking his medication for the last week to 9 days and the doctor noted Plaintiff had been noncompliant from time to time. R. 1694. It is permissible for a court to consider noncompliance with medication as part of a subjective symptoms analysis. *See, e.g.*, *Lamantia v. Berryhill*, No.

16 C 2691, 2017 WL 3263477, at *10 (N.D. Ill. Aug. 1, 2017); *Ellis v. Barnhart*, 384 F. Supp. 2d 1195, 1204 (N.D. Ill. 2005).

Regarding Plaintiff's contention that his numerous injections belie the ALJ's conclusion that his treatment was conservative, many courts categorize such treatment as "conservative care." *See Olsen v. Colvin*, 551 F. App'x. 868, 875 (7th Cir. 2014); *Frazier v. Berryhill*, 2019 WL 157911 (N.D. Ill. Jan. 10, 2019). More importantly, the ALJ did not rely solely on the fact that Plaintiff treated with injections to support her conclusion that his treatment was conservative. She also relied on the fact that those injections provided good relief for his symptoms. R 1031, 1032, 1033. Accordingly, it was not patently wrong for the ALJ to consider Plaintiff's treatment conservative and to discount Plaintiff's subjective symptom testimony on that basis.

### 3. Acute distress

In her decision, the ALJ states that, "Despite reports of severe pain, [Plaintiff] was often in no acute distress on examination, and Dr. Plescia noted [Plaintiff] to be talkative or making jokes, while seeking more treatment for his pain complaints." R. 1040. Plaintiff cites several cases stating that one cannot assume what a medical professional means by the phrase "no acute distress," especially when there is no discussion or explanation in the entry. Pl.'s Br. at 16, Dkt. 20. *See, e.g.*, *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015) (noting that "acute" can refer to a disease, health effect, or symptom having a sudden, abrupt onset and a short, but severe, course, as opposed to a chronic condition or symptom having a slow development and a protracted but mild course; and, for physicians' purposes, "no acute distress" can simply mean that a patient will probably not become unstable in the next five minutes). While this Court notes that a number of courts have made such a finding, a significant number of other courts have ruled that a finding of "no acute distress" is a relevant

factor for an ALJ to consider in a symptom evaluation, especially when accompanied by other findings. *See Spencer v. Saul*, No. 20-CV-3028, 2021 WL 1199027, at *13 (C.D. Ill. Mar. 30, 2021) (collecting cases). More importantly, the Seventh Circuit has upheld an ALJ's decision in which the ALJ relied on examination notes that a claimant was in no acute distress along with other evidence to evaluate the severity of a claimant's symptoms. *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010). Here, the ALJ relied not only on the repeated finding that Plaintiff was in "no acute distress," she also relied on the fact that Plaintiff was talkative or making jokes while requesting additional treatment for his pain. Further, as set forth above, the ALJ listed over 15 reasons for discounting Plaintiff's reports of pain and disabling symptoms. As such, it was not error for the ALJ to rely on physicians' records finding Plaintiff in no acute distress in evaluating the severity of his symptoms.

### 4. Truck driving

Plaintiff points out a footnote in which the ALJ states that a record reflects that he stopped driving trucks in 2017, a year after his alleged onset date. Pl.'s Br. at 17, Dkt. 20. Plaintiff states that the ALJ failed to question him about this at the hearing, proposes that this was simply an error, and questions why the ALJ gave weight to the reference regarding work. *Id*. As the Commissioner points out, there is no indication that the ALJ relied on this record as a reason to discount Plaintiff's allegations. Def.'s Resp. at 5, Dkt. 25. However, even if the ALJ did give weight to this, not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell*, 357 F. App'x at 722 (emphasis in original). The Court finds that, even without the reference to truck driving, the ALJ included sufficient evidence in her decision to support her evaluation of Plaintiff's subjective allegations.

In sum, because the ALJ "pointed to specific findings and evidence to support her credibility determination" on this matter, it is not the Court's place to second-guess it. *Morrison*, 806 F. App'x at 474 (citing *Murphy*, 759 F.3d at 815-16, as amended (Aug. 20, 2014) (noting credibility determination is patently wrong if it "lacks any explanation or support")). The subjective symptom evaluation as a whole was not patently wrong and thus a remand is not warranted.

## B. Vocational Expert Testimony

The Commissioner has the burden at step five to show that work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). *See McKinnie v. Barnhart*, 65 F. App'x 80, 84 (7th Cir. 2003). At the first hearing, the ALJ heard testimony from VE Richard Fisher, who testified that given Plaintiff's age, education, work experience, and RFC, there existed a sufficient number of jobs in the national economy. He stated that 3 jobs were available: an information clerk with 66,000 jobs nationally, a marker with 169,000 jobs nationally, and a mail clerk with 43,000 jobs nationally. R. 66-67. Plaintiff's attorney was given the opportunity to question the VE and he did not have any questions, nor did Plaintiff make any objections.

On remand, the ALJ was instructed: "As necessary, the [ALJ] will obtain supplemental evidence from a vocational expert to clarify the assessed limitations on the claimant's occupational base." R. 1171. At the second hearing, the ALJ called a new VE to testify. The ALJ questioned the new VE using hypotheticals based on the same RFC utilized in the first hearing. VE Eric Dennison stated that 3 jobs were available: an information clerk with 74,000 jobs nationally, a marker with 54,000 jobs nationally, and an office helper with 11,000 jobs nationally. R. 1100. Plaintiff's counsel questioned the VE about the reliability of the methodology he used to produce the job numbers, and the VE responded that he uses software called OccuBrowse+, from a

company called SkillTRAN, and breaks the numbers down using the equal distribution method. R. 1108-09. Plaintiff objected to the methodology used by the VE on the basis that it produces job numbers that potentially encompass different exertional levels and skill levels. R. 1112-13. He also stated that "the equal distribution method was a concern of the Seventh Circuit case *Chavez v. Berryhill*." R. 1113. *See Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018).[3]

In her decision, the ALJ did not rule on the objection made at the hearing. Instead, she noted in her opinion:

> As noted in the remand order, supplemental vocational expert testimony was only required if necessary. Because, as discussed above, I have determined that the more restrictive residual functional capacity set forth in the first decision remains appropriate and supported by the evidence throughout the course of the relevant time period, I have relied on the vocational expert's testimony from the first hearing. Accordingly, the objections offered by the claimant's representative to the testimony of the vocational expert at the remand hearing need not be addressed.

R. 1043.

Plaintiff first asserts that, "[w]hen the Appeals Council remanded this case, it wrote 'as necessary, the ALJ **will** obtain supplemental evidence from a VE.'" Pl.'s Br. at 19, Dkt. 20 (emphasis in original). In other words, Plaintiff appears to be asserting that the ALJ was required to obtain new VE testimony. This is incorrect. As quoted above, the Appeals Council directed the ALJ to do so "*[a]s necessary*." R. 1171 (emphasis added). When an ALJ determines that a claimant's RFC remains the same on rehearing, the ALJ can rely on VE testimony from a prior hearing concerning that RFC. *See Fernandez v. Colvin*, 642 F. App'x 878, 881-82 (10th Cir. 2016) (unpublished) (because the ALJ had determined that the plaintiff's RFC did not need to be modified, the ALJ

---

[3] The Court will not delve into the objection itself since the Court finds that the ALJ could appropriately rely on the previous VE testimony for other reasons. However, the Court finds it important to point out that the Seventh Circuit has explained that "*Chavez* did not enjoin the use of the equal-distribution method and created 'no new obligations' at step five; the substantial-evidence standard still governs." *Coyier v. Saul*, No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (citation omitted).

could properly rely on the testimony of a VE from a prior hearing and was not required to rely on

that from the most recent hearing); *Ramey v. Colvin*, 7:15-CV-242, 2016 WL 4529787 (W.D. Va.

Aug. 3, 2016), *report and recommendation adopted*, 7:15-CV-00242, 2016 WL 4532414 (W.D.

Va. Aug. 29, 2016) (holding that reliance on VE testimony given at a hearing from a prior

application is not per se improper when the ALJ's present RFC was the exact same as the RFC

determined in the prior case); *Hylton v. Colvin*, No. 4:13-cv-00067, 2015 U.S. Dist. LEXIS 92850

(W.D. Va. July 17, 2015) (same); *Holzworth v. Colvin*, No. 2:12-CV-916 BCW, 2014 WL

6977700, at *2 (D. Utah Dec. 9, 2014) (discussing that an ALJ can properly rely on VE testimony

from a prior hearing rather than the most recent hearing when the RFC has not changed); *Paulson

v. Astrue*, 368 Fed. App'x. 758 (9th Cir. 2010) (unpublished) (holding that the ALJ did not err by

relying on the testimony of a VE from a prior hearing because the ALJ found nothing warranted

modifying the previous RFC findings). Accordingly, because the ALJ in this case determined that

the RFC did not change, the remand order did not require her to hear testimony from a new VE.

> Plaintiff next argues:
>
> Instead of ruling on the objection or obtaining supplemental VE testimony from a different VE, the ALJ adopted prior testimony of 2/3 of the same jobs, with no evidence as to the job data methodology or why there was a huge disparity in job data. It does not make sense that because one representative questioned methodology and one did not, the unchallenged testimony is now more reliable.

*Id*. at 20. To the extent that Plaintiff is arguing that there is no evidence as to the methodology for

the job data provided by the VE at the first hearing, the Court finds this argument unavailing.

Plaintiff's former counsel had the opportunity to object at the hearing and did not do so, which

effectively means that he forfeited any objections. *See Coyier*, 2021 WL 2173425, at *2

("[Plaintiff] waived any challenge to the VE's testimony by failing to ask any questions to reveal

shortcomings in the job-number estimates . . . [This] effectively conceded the reliability of the

VE's job numbers."); *Teschner v. Colvin*, No. 15 CV 6634, 2016 WL 7104280, at *13 (N.D. Ill. Dec. 6, 2016) (finding that, when a claimant is represented by counsel at an administrative hearing, "[a] claimant waives any subsequent objection to a VE's unexplained testimony on the source of job numbers when her counsel fails to question the VE on that issue at the hearing.").

Finally, even though the ALJ was not required to call a new VE to testify in this case, the fact is that she did call a new VE. Thus, it appears that Plaintiff is arguing that once a new VE is called to testify the ALJ may no longer rely on the previous VE's testimony even if the RFC did not change. Plaintiff cites no support for such a statement. Although it does not appear that the Seventh Circuit has addressed this type of situation, another court of appeals has analyzed the issue in *Garza v. Apfel*, 162 F.3d 1173 (10th Cir. 1998) (unpublished table decision).[4] The facts in *Garza* are as follows: the ALJ held a hearing in which a VE testified, and the ALJ ultimately ruled against the plaintiff. *Id*. at 1. On review, the Appeals Council remanded the case for further consideration and ordered the ALJ to obtain testimony from a VE. *Id*. After holding a second hearing with another VE, the ALJ again issued a decision denying the plaintiff's claims. *Id*. at 2. The ALJ had determined that the plaintiff's RFC had not changed since the first hearing and relied on the testimony of the VE from the first hearing in his decision. *Id*. On appeal, the plaintiff contested the fact that the ALJ ignored the second VE's testimony and instead relied on the first VE's testimony. *Id*.

The Tenth Circuit ultimately found that the ALJ could properly rely on the first VE's testimony for three reasons. *Id*. at 3. First, the court noted that the regulations provide that "[t]he [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional

[4] The Court acknowledges that this case is non-precedential due to its unpublished nature as well as the fact that it is an opinion arising out of another circuit. Nevertheless, the Court references this case because of the limited number of cases on this topic and because of its persuasive authority.

action that is not inconsistent with the Appeals Council's remand order," and found that declining to adopt the second VE's testimony was not inconsistent. *Id.* at 2. (citing 20 C.F.R. §§ 404.977(b); 416.1477(b)). Second, the court stated that VE testimony from the second hearing was not binding on the ALJ because "the hypotheticals posed to the second VE did not set forth only impairments which had been accepted as true by the ALJ." *Id.* Lastly, the court explained that, because the hypothetical the ALJ propounded to the VE at the first hearing contained the same RFC found by the ALJ following the remand, the ALJ could rely upon the first VE's testimony. *Id.* at 3.

Applying *Garza* to the facts in the instant case, the Court finds that the ALJ could properly rely on the first VE's testimony. First, as set forth above, the language of the Appeals Council's remand order did not require that new VE testimony be heard. Second, none of the hypotheticals posed to the second VE had yet to be accepted by the ALJ, so the second VE's testimony was not binding. Finally, the ALJ in this case explicitly stated her reasoning for choosing to adopt the same RFC on remand and had posed a hypothetical to the first VE based on that original RFC. Therefore, it was appropriate for the ALJ to rely on the first VE's testimony.

## C. Opinion Evidence

Plaintiff devotes less than two pages to his argument that the ALJ improperly weighed the opinion evidence of three physicians. Once again, Plaintiff's arguments are undeveloped.

### 1. Dr. Painter

Plaintiff argues that the ALJ did not correctly apply the treating physician rule ("TPR")[5] when evaluating the opinion of Dr. Painter. Pl.'s Br. at 21, Dkt. 20. A treating physician's opinion

---

[5] The Social Security Administration recently modified the TPR to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.") (emphasis added) *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or

is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is "not inconsistent with the other substantial evidence in the case." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If an ALJ does not give a treating source's opinion controlling weight, the ALJ must consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(c).

Here, the ALJ gave Dr. Painter's opinions little weight. She based her decision on the fact that Dr. Painter saw Plaintiff for a two-month period, between September and November 2018, yet he offered an opinion in August 2019 without having examined or treated Plaintiff for nearly a year. The ALJ pointed out that there were several evaluations ordered by Dr. Painter, but only one treatment note from Dr. Painter appeared in the record. Moreover, that one treatment note indicates that the exam was not overly concerning or consistent with frank radiculopathy. He further noted mild peripheral neuropathy with no evidence for active radiculopathy, 5/5 strength and intact sensation. The ALJ noted that these findings were inconsistent with Dr. Painter's statement that the extreme limitations he assessed were supported in part by "chronic axonal polyneuropathy" and "left cervical radiculitis." The ALJ also explicitly stated that she found Dr. Painter's opinions unsupported by the longitudinal record, Dr. Plescia's recommendations, and Dr. Goldstein's opinion testimony. R. 1041-42. An ALJ's opinions regarding the weight to be given to a treating physician will be upheld if supported by good reasons. Because the ALJ has sufficiently accounted for the factors with evidence supported by the record, her evaluation is supported by substantial evidence. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013)

---

after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2016. Accordingly, the ALJ was required to apply the TPR when deciding Plaintiff's application.

("[O]ur inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527.").

Plaintiff specifically challenges the ALJ's consideration of certain TPR factors. First, Plaintiff asserts that Dr. Painter, unlike Dr. Plescia, is a specialist in pain management, and the ALJ failed to address this. However, Plaintiff did not provide any citation in support of his assertion that Dr. Painter was a "specialist in pain management" and this Court was unable to find any such reference in the record. The ALJ did, however, acknowledge that Dr. Painter was part of the Lundholm Orthopedics department, meeting the TPR factor requiring an ALJ to consider a physician's specialty. *See* 20 C.F.R. § 404.1527(c)(5). R. 1912, 1929. Therefore, the ALJ did not err in her consideration of Dr. Painter's specialty.

Plaintiff next argues that there are records that support Dr. Painter's conclusions. Plaintiff cites to medical records showing he had lower extremity problems with faint pedal pulses, pain, and a burning/tingling sensation; he was noted to have neuropathy; disc disease from a cervical MRI; EMG testing confirmed polyneuropathy in 2018; mild degenerative changes from an MRI of the thoracic spine; and he testified about falling and being in greater pain if he was on his feet all day. In the Court's reading, Plaintiff seems to be arguing that the ALJ engaged in "cherry picking" when considering the TPR factor of consistency and supportability of the physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3)-(4). However, the ALJ discussed each of these records in her opinion and provided multiple reasons for discounting them.

With respect to the records Plaintiff cites concerning his lower extremity pain and the pain he experiences when he is on his feet for long periods, the ALJ noted that Plaintiff was being treated conservatively and relied on Dr. Goldstein's opinion that Plaintiff's pain complaints were out of proportion to his medically determinable impairments. R. 1038, 1040. Regarding the

18

evidence of neuropathy, the ALJ wrote that Dr. Goldstein provided a detailed explanation of Plaintiff's most recent EMG study results and opined that the neuropathy was "barely mild." R. 1039. The ALJ also pointed out that Dr. Painter himself characterized the polyneuropathy as mild. R. 1042. Finally, concerning the MRI results showing degenerative changes and disc disease, the ALJ noted that certain functional limitations could accommodate these issues. R. 1041. The Court finds that the ALJ's interpretation and weighing of the evidence was reasonable, so it will not undertake to reweigh it. *See Wegner v. Barnhart*, 105 F. App'x 80, 83 (7th Cir. 2004).

**2. Dr. Goldstein**

Plaintiff seems to assert that the ALJ selectively chose to give significant weight to certain aspects of Dr. Goldstein's testimony while failing to consider aspects of the testimony that favored Plaintiff. Pl.'s Br. at 22-23, Dkt. 20. In support of this assertion, Plaintiff points to three parts of Dr. Goldstein's testimony. *Id*.

First, Plaintiff argues that Dr. Goldstein admitted that Plaintiff was deconditioned and less than sedentary. However, this is a distortion of Dr. Goldstein's testimony. At several points throughout the hearing, Dr. Goldstein made it clear that this statement was based purely on Plaintiff's own testimony and the fact that he was simply not doing anything, not based on any medically determinable impairments. R. 1080-81, 1090, 1094-95. When directly asked by the ALJ what functional level Plaintiff was able to perform, Dr. Goldstein responded that Plaintiff could perform a light level activity. R. 1094. Accordingly, the Court finds that the testimony about Plaintiff being "deconditioned and less than sedentary" does not contradict the ALJ's use of Dr. Goldstein's opinions in her assessment.

Plaintiff next argues that the ALJ relied on Dr. Goldstein's testimony about neuropathy despite the fact that he acknowledged that one could have neuropathy with normal or mild EMG

results and conceded that there was evidence of diabetic neuropathy in the record. With respect to EMG results, Plaintiff misrepresents Dr. Goldstein's testimony. At the hearing, Plaintiff's counsel asked whether an individual could have neuropathy with an EMG coming back as normal or mild. Dr. Goldstein responded: "Well he can have what's called a small motor fiber neuropathy, small fiber neuropathy, and that's usually diagnosed with biopsy." R. 1085-86. This certainly does not mean that he believed Plaintiff had this type of neuropathy; it was an explanation of what was generally possible. Additionally, despite the fact that Dr. Goldstein admitted that there was "some evidence" of diabetic neuropathy in the record, R. 1087, he did not rescind his opinion that "to say [Plaintiff] has significant peripheral neuropathy is a stretch," nor did he change his RFC assessment. R. 1085, 1094. Furthermore, the ALJ made a point to note that, in subsequent appointments, monofilament testing was normal and showed grossly intact neurological examinations. R. 1039. The Court finds that Dr. Goldstein's testimony concerning neuropathy does not negate the ALJ's use of his opinions.

Plaintiff's final contention with respect to Dr. Goldstein is related to the fact that he found Plaintiff's significant pain complaints to be in excess of the objective evidence. Plaintiff argues that the ALJ failed to explain why that "supports a finding of light work other than ME Goldstein's wavering testimony." Pl.'s Br. at 23, Dkt. 20. To the contrary, the ALJ provided a detailed and thorough explanation of why the evidence, including Dr. Goldstein's opinions, support a finding of light work. *See* R. 1034-42.

### 3. Dr. Plescia

Plaintiff also takes issue with the fact that the ALJ found Dr. Plescia's records supported her conclusion. Pl.'s Br. at 16-17, 23, Dkt. 20. Plaintiff first argues that, while the ALJ indicates she relies on Dr. Plescia's examination, she ignores Dr. Plescia's notes "supporting pain and a

need to be in a sedentary position." *Id*. at 16-17. In the Court's reading, Plaintiff appears to be making the argument that the ALJ selectively "cherry picked" Dr. Plescia's notes to support her subjective symptoms evaluation.

In response to a "cherry picking" argument, courts find that an ALJ has not been improperly selective in building their reasoning when the ALJ has pointed to numerous treatment notes from that doctor supporting her opinion and has discussed both positive and negative treatment notes. *See Baumann v. Saul*, No. 20-CV-11-WMC, 2020 WL 7237921, at *8 (W.D. Wis. Dec. 9, 2020); *Sutherland v. Astrue*, No. 2:11 CV 24, 2012 WL 911898, at *10 (N.D. Ind. Mar. 15, 2012). In her decision, the ALJ in this case pointed to numerous treatment notes from Dr. Plescia supporting her decision, R. 1040, 1042, and engaged in a discussion of both positive and negative treatment notes from Dr. Plescia, R. 1035, 1040. Therefore, the ALJ's consideration of and reliance on Dr. Plescia's treatment notes and opinions are supported by substantial evidence.

Plaintiff also argues that the ALJ's RFC is inconsistent with a treatment note where, in response to Dr. Plescia's suggestion to become more physically active, Plaintiff indicated he could not walk due to his pain. In the same treatment record from May 2017, however, Dr. Plescia expressed frustration that Plaintiff seemed to have a reason to not do every idea he came up with. R.1436. The record demonstrates that Dr. Plescia, who was well aware of Plaintiff's complaints of pain, consistently recommended that Plaintiff be more active and discouraged him from things that would enable him to move less, such as disability benefits and a disability placard.[6] R. 980, 1711. *See Roxanne L. v. Berryhill*, No. 18 CV 50059, 2019 WL 2173789, at *6 (N.D. Ill. May 20, 2019) ("Presumably, the doctor would not have advocated that [the plaintiff] be more active if he believed

---

[6] Moreover, several other doctors that treated Plaintiff (including Dr. Painter in October 2018, Dr. Caceres in February 2019, and Dr. Taylor in October 2019) tried to encourage him to exercise more. R. 1472, 1929, 2128.

she was not physically capable of doing so."). Based on these consistent notes from Dr. Plescia recommending Plaintiff move and exercise more, the Court concludes that the assertion that Dr. Plescia's records support the RFC is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.


Date: September 1, 2021                    By: _Lisa A. J_____
                                               Lisa A. Jensen
                                               United States Magistrate Judge